1   MICHAEL B. BROWN, Bar No. 179222
    michael.brown@stoel.com
2   THOMAS A. WOODS, Bar No. 210050
    thomas.woods@stoel.com
3   BENJAMIN J. CODOG, Bar No. 307034
    ben.codog@stoel.com
4   MICHELLE J. ROSALES, Bar No. 343519
    michelle.rosales@stoel.com
5   STOEL RIVES LLP
    500 Capitol Mall, Suite 1600
6   Sacramento, CA  95814
    Telephone:  916.447.0700
7   Facsimile:  916.447.4781

8   *Attorneys for Plaintiff*
    METLIFE REAL ESTATE LENDING, LLC

9

10              UNITED STATES DISTRICT COURT

11      EASTERN DISTRICT OF CALIFORNIA - FRESNO DIVISION

12

13   METLIFE REAL ESTATE LENDING, LLC, a          Case No. 1:24-cv-01241-KES-SAB
     Delaware limited liability company,
14                                                **PLAINTIFF'S *EX PARTE* MOTION
                    Plaintiff,                    FOR ORDER APPOINTING
15                                                RECEIVER AND FOR PRELIMINARY
              v.                                  INJUNCTION**
16
     PANOCHE PISTACHIOS, LLC, a California
17   limited liability company; WILLOW AVENUE
     INVESTMENTS, LLC, a California limited
18   liability company; FARID ASSEMI, an          Date:
     individual; FARSHID ASSEMI, an individual;   Time:
19   DARIUS ASSEMI, an individual; and DOES       Dept.:
     1-100,
20                                                Action Filed: October 11, 2024
                    Defendants.                   Trial Date: Not Set
21

22

23

24

25

26

27

28

STOEL RIVES LLP
ATTORNEYS AT LAW
SACRAMENTO

EX PARTE MOTION FOR ORDER
APPOINTING RECEIVER              -1-        CASE NO. 1:24-CV-01241-KES-SAB

126366697.3 0053564-00657

***EX PARTE* MOTION FOR APPOINTMENT OF**
**RECEIVER AND FOR PRELIMINARY INJUNCTION**

Plaintiff METLIFE REAL ESTATE LENDING, LLC, ("Plaintiff' or "MREL"), by and through its counsel, and for its *Ex Parte Motion for Appointment of Receiver and for Preliminary Injunction* (the "Motion"), states as follows:

## I.      INTRODUCTION

Defendants PANOCHE PISTACHIOS, LLC and WILLOW AVENUE INVESTMENTS, LLC, (the "Borrower Defendants"), together with their affiliated Guarantors[1] are in default to MREL (alone) on an over $6 million secured debt obligation. Since mid-September, some of the Defendants and their affiliated farming entities have been sued by other financial institutions for defaults on secured agricultural loans associated with imperiled harvests and imminent loss of trees, irrigated crops, water rights, and delivery systems. Defendants are out of money, and the collateral that is valuable to California's agricultural supply stream *is out of time*. A receivership and injunction to protect the land and water rights MREL is responsible for is now warranted and requested.

As security for the obligations under MREL's Loan Documents[2], the Borrower Defendants granted to MREL, among other rights, priority and continuing, recorded (and perfected) security interests in real property and personal property as collateral located in Kern County. As part of the Loan Documents, the Borrower Defendants expressly consented to MREL's appointment of a receiver in the event of default. (Complaint[3], Ex. 1 at § 11.1(h) [Loan Agreement], Ex. 3 at Section 13.1(g) [Deeds of Trust].)

//

---

[1] The Guarantor Defendants include Farid Assemi, Farshid Assemi, and Darius Assemi, each individually.

[2] MREL incorporates the terms of its October 11, 2024 Complaint (Dkt. 1).  Capitalized terms not defined herein shall have the meanings ascribed to them in the Complaint.

[3] MREL filed the Complaint for (1) Breach of Loan Agreement; (2) Breach of Guaranty; (3) Judicial Foreclosure Under Security Agreement; (4) Judicial Foreclosure Under Deed of Trust; (5) Specific Performance and Appointment of Receiver; (6) Injunctive Relief; and (7) Replevin.

STOEL RIVES LLP
ATTORNEYS AT LAW
SACRAMENTO

EX PARTE MOTION FOR ORDER
APPOINTING RECEIVER

-2-

CASE NO. 1:24-CV-01241-KES-SAB

126366697.3 0053564-00657

1    Accordingly, pursuant to Federal Rule of Civil Procedure 66 and L.R. 232, MREL requests

2    the appointment of a receiver in order to conserve, maintain, and manage: (i) real property owned

3    by Borrower Defendants, including all appurtenances, improvements, permanent plantings, water

4    rights and irrigation equipment and infrastructure, easements, and rent, issues and profits (the "Real

5    Property") (as further defined and described in MREL's Complaint, ¶ 6); and (ii) personal property,

6    not limited to: all equipment, goods, and accounts, whether attached or appurtenant to the Real

7    Property; all crops (including without limitation harvested crops, farm products, and seed and the

8    products and proceeds thereof) along with all present and future income, rents, issues, profits and

9    revenues of the crops now or hereafter growing on the Real Property; all rights to the use and

10   enjoyment of water, whether or not appurtenant to the Real Property, and all improvements for

11   water delivery and storage, and easements and permits associated with the same (collectively, the

12   "MREL Receivership Property").

13   Defendants have been provided ample notice of this (and other) defaults. (*See* Dkt. 1 at

14   ¶¶ 18-19 [Complaint].)[4] The defaults are evidently incurable, as Borrower Defendants and their

15   affiliates' efforts to secure long-term financing to support the agriculture have fallen short. (RJN,

16   Exs. 1-3.)   Borrower Defendants and/or its affiliates, for instance, are already subject to two

17   receiverships, one in the process of being continued and expanded from its original scope.[5]  (*Id.*)

18   The crop harvest is also set to conclude by the end of October 2024, and no further funding exists

19   after that time to preserve and maintain the MREL Receivership Property. (RJN, Ex. 3.) Without

20   sufficient funding, the MREL Receivership Property, and particularly the trees comprising a

21   significant portion of the value thereof, are subject to damage or destruction if not properly

22   maintained during and after harvest.  A receiver is also necessary to preserve and protect MREL's

23

24   [4]   See also, Request for Judicial Notice ("RJN"), filed herewith, Exs. 1 and 2.

25   [5]   Borrower Defendants and/or their affiliated farming entities have stipulated and agreed to the
     appointment of a receiver in two related actions involving real property collateral in their integrated
26   farming operations and acknowledged that "Borrowers face significant cash flow issues and will
     not have sufficient case to maintain, preserve, and care for the Property, including but not limited
27   to trees and crops" and that "[s]uch actions would cause damage to the Property, including causing
     the trees (which make up a significant value of the Property) to be damaged or die." (RJN, Ex. 1 at
28   4:1-4.)

STOEL RIVES LLP
ATTORNEYS AT LAW
SACRAMENTO

EX PARTE MOTION FOR ORDER
APPOINTING RECEIVER                          -3-          CASE NO. 1:24-CV-01241-KES-SAB

126366697.3 0053564-00657

1   interests in the water rights and crop proceeds relating to the MREL Receivership Property.

2   Receiver Lance Miller in the related action recently prepared and distributed a Weekly Update

3   Memorandum, dated October 21, 2024, which identified $494,400 in water sales from unspecified

4   Maricopa farming entities and over $5.7 million in crop proceeds from the harvest of almonds and

5   pistachios (none of which has been remitted to MREL despite Borrowers' defaults and MREL's

6   security in the crop proceeds). (Declaration of Jeremy Rasmussen ("Rasmussen Decl."), Ex. 1.) A

7   receiver is warranted to preserve and prevent the misappropriation of the MREL's collateral.

8          MREL is contractually and equitably entitled to the immediate appointment of a receiver to

9   manage and operate, subject to the discretion of this Court, the MREL Receivership Property.

10  MREL also has the right to a preliminary injunction because it faces irreparable harm should

11  Borrower Defendants and/or other associated Defendants' officers and directors, affiliates, creditors

12  or other interested parties interfere with the receiver in the performance of its duties.

13         This requested order will ensure that MREL shall protect and preserve the MREL

14  Receivership Property.  MREL requests that this Court issue an order appointing a receiver over

15  the MREL Receivership Property and enjoining any and all Borrower Defendants, Guarantors, and

16  third parties from interfering with the receiver's maintenance and operation of the MREL

17  Receivership Property during the pendency of these proceedings.  In addition to maintaining and

18  managing the MREL Receivership Property, MREL also requests that the order appointing the

19  receiver instruct the receiver to: operate the MREL Receivership Property pending any sale of such

20  property; sell inventory and collect accounts in the ordinary course of operations; liquidate the

21  MREL Receivership Property, in whole or in part, by auction or by private sale subject to Court

22  approval; and perform all other acts consistent with the terms of the order entered by the Court.

23                      **II.      FACTUAL AND PROCEDURAL BACKGROUND**

24  **A.      THE LOAN DOCUMENTS AND LENDER'S COLLATERAL.**

25         4.      On or about September 27, 2019, MREL, as lender, made a loan to Carreon

26  Holdings, LLC, a California limited liability company and Wells AGC Holdings, LLC, a California

27  limited liability company (collectively, "Original Borrowers"), as borrowers, in the original

28  principal amount of Six Million Four Hundred Eighty-Five Thousand and 00/100 Dollars

STOEL RIVES LLP
ATTORNEYS AT LAW
SACRAMENTO

EX PARTE MOTION FOR ORDER
APPOINTING RECEIVER                        -4-          CASE NO. 1:24-CV-01241-KES-SAB

126366697.3 0053564-00657

($6,485,000.00) ("Loan").  The Loan is secured by, *inter alia*, that certain Deed of Trust, Security Agreement, Assignment of Rents and Leases and Fixture Filing dated September 27, 2019, and recorded on September 27, 2019, with the Kern County Official Records as Document No. 219126498 ("Deed of Trust"), in favor of MREL, as beneficiary, under which Original Borrowers, as trustors, conveyed to Leon A. Moreno, as trustee, real property situated in the County of Kern, State of California, and described on Exhibit "A" to the Deed of Trust, and all appurtenances, fixtures, permanent plantings, rights and benefits thereto, as described in the Deed of Trust (the "Real Property"). The Deed of Trust was amended by that certain Consent to Transfer and Assumption Agreement by and among Original Borrowers and Borrower Defendants, dated March 8, 2023, and recorded on March 9, 2023, in the Kern County Official Records as Document No. 223027305 ("Consent"), pursuant to which Borrower Defendants assumed all obligations evidenced by the Note and all documents evidencing the Loan from Original Borrowers.  Pursuant to certain Grant Deeds, Carreon Holdings, LLC conveyed its interest in the Real Property to Panoche Pistachios, and Wells AGC Holdings, LLC conveyed its interest in the Real Property to Willow Avenue.  (Dkt. 1-3 at Granting Clause C, § 10.5(a) [Deed of Trust]; Dkt. 1-4.)

The Loan is also secured by "Water Rights" as that term is defined in the Deed of Trust, and includes, without limitation, all water agreements and contracts with the Semitropic Improvement District of Semitropic Water Storage District including that Contract for Intermittent Water Deliveries in Lieu of Groundwater Pumping, recorded on March 9, 2021 in the Kern County Official Records as Document No. 221044356, and all other agreements, service contracts and other entitlements to water. (Dkt. 1 at ¶ 7 [Complaint]; Dkt. 1-1 at § 2.4 [Loan Agreement]; Dkt. 1-3 at § 2.7 [Deed of Trust].)

The Deed of Trust constitutes a Security Agreement with respect to the MREL Receivership Property. As further described in the Complaint and attachments thereto, MREL possesses, through the Deed of Trust, priority security interests in: (i) Real Property, comprising of approximately 529.02 acres of irrigated agricultural products, including but not limited to almond orchards

STOEL RIVES LLP
ATTORNEYS AT LAW
SACRAMENTO

EX PARTE MOTION FOR ORDER
APPOINTING RECEIVER
126366697.3 0053564-00657

-5-

CASE NO. 1:24-CV-01241-KES-SAB

associated with Assessor Parcel Numbers ("APN") owned by the Borrower Defendants[6]; (ii) all appurtenances, fixtures, permanent plantings, rights and benefits thereto, including all water rights, water agreements and related water delivery contracts, easements, leases, water storage agreements, rights under irrigation districts, well agreements, drainage rights and all water inventory and water in storage, water permits, and water licenses; and (iii) the products and proceeds thereof related to the MREL Real Property including, but not limited to, the products and proceeds of almond orchards and other agricultural products.

**B.    BORROWER DEFENDANTS' INCURABLE DEFAULTS.**

**1.    Borrower Defendants' Unpaid Loan.**

On September 4, 2024, MREL provided to all Defendants a Notice of Default and Demand for Payment for the approximate total due of $243,974. Defendants were further informed that if payment was not received by September 10, 2024, MREL would initiate a demand and acceleration of the Loan. (Dkt. 1-8.)

The past due amount was not paid by September 10, 2024, and on or about September 18, 2024, MREL sent Defendants a Notice of Default and Acceleration of Debt. (Dkt. 1-9.)

As of on or about September 18, 2024, the amounts that remain due and owing under the Loan Documents, including but not limited to all principal outstanding, interest, late charges, attorneys' fees, financial advisor fees, expenses, and advances, are in excess of $6,568,404. (Rasmussen Decl., ¶¶ 19, 30.)

**2.    Other Defaults.**

Except for the defaults that are subject to the two pending receiverships in the potentially related actions, MREL does not know the extent of Defendants' defaults to additional lenders or creditors, but these defaults (and the acceleration of the Loan) augment the precarious financial situation for Borrower Defendants and their related entities and affiliates.

//

//

---

[6] The APNs for the real property located in Kern County are: APN 239-070-48-01, 239-340-01-00-2, 239-340-13-00-7, 239-340-14-00-0, 239-340-42-00-1, 239-340-44-00-7, 239-340-46-00-3, 103-100-21, 103-100-20, 103-100-19, and 103-040-37.

STOEL RIVES LLP
ATTORNEYS AT LAW
SACRAMENTO

EX PARTE MOTION FOR ORDER
APPOINTING RECEIVER                    -6-                    CASE NO. 1:24-CV-01241-KES-SAB

126366697.3 0053564-00657

## C.   BORROWER DEFENDANTS' FINANCIAL DISTRESS IS INCURABLE AND PUTS THE MREL RECEIVERSHIP PROPERTY AT RISK OF DISTRESS.

Borrower Defendants' financial strain and lack of operating cash flow places the MREL Receivership Property in serious peril of distress itself. MREL is informed and believes, based on discussions with employees at Agriglobe LLC who recently conducted inspections of the Real Property and interviews with Borrower Defendants' farm managers, there has been deferred cultural maintenance of the biological assets on the MREL Receivership Property because of Borrower Defendants' financial distress, and the following needs to occur or the biological assets on the MREL Receivership Property will be damaged or destroyed: post-harvest irrigation; post-harvest fertility; post-harvest soil amendments; winter sanitation (removal of any crop remaining on the trees); dormant insecticide spray applications; vertebrate control; pruning; and general repairs and maintenance to the irrigation system and other infrastructure. (Rasmussen Decl., ¶ 26.)

Borrower Defendants and its related farming affiliates have significant cash flow and liquidity issues, and has insufficient funds to operate post-harvest. (*Id.*, ¶ 24.) These issues are likely to result in an inability to pay payroll and maintain a sufficient workforce necessary to manage the MREL Receivership Property including the water rights associated therewith. (*Id.*, Ex. 1.)

As a result of the foregoing, there is manifest danger of loss, deterioration, and diminution of the MREL Receivership Property, which, along with the revenue generated by its operations, are the primary sources for repayment of the Loans, and MREL, as an interested and secured party, is threatened with material losses and injuries for which it has no adequate remedy at law against Borrower Defendants.

## III.   ARGUMENT AND LEGAL AUTHORITY

### A.   MREL IS ENTITLED TO THE APPOINTMENT OF A RECEIVER.

Federal courts may appoint a receiver under their inherent equitable powers, which appointment shall not be disturbed absent an abuse of discretion. *Canada Life Assur. Co. v. LaPeter*, 563 F.3d 837, 843-44 (9th Cir. 2009). Courts consider several factors in their analysis, including: (1) whether the moving party has a valid claim and is likely to succeed in the action; (2) whether the property interest at issue "is in imminent danger of being lost, concealed, injured, diminished

STOEL RIVES LLP
ATTORNEYS AT LAW
SACRAMENTO

EX PARTE MOTION FOR ORDER
APPOINTING RECEIVER

-7-

CASE NO. 1:24-CV-01241-KES-SAB

126366697.3 0053564-00657

in value, or squandered"; (3) the possibility of irreparable injury to the moving party's interest in property; (4) whether the defendant is of doubtful financial standing; and (5) whether a receiver is necessary to protect the property or property interest of Plaintiff and other parties. *Id*. at 844; *see also N.Y. Life Ins. Co. v. Watt West Inv. Corp.*, 755 F. Supp. 287, 292 (E.D. Cal. 1991) (same). The chief factors are the adequacy of the security serving as collateral and financial state of the defendant. *N.Y. Life*, 755 F. Supp. at 292.

### 1. Borrowers' Written Agreements Establish MREL's Entitlement to the Appointment of a Receiver.

Federal courts have upheld the validity of receiverships based on an express agreement between lender and debtor. *See Okura & Co. (Am.), Inc. v. Careau Grp.*, 783 F.Supp. 482, 499 (C.D. Cal. 1991) ("the appointment of receiver, as provided for in the Deed of Trust and Security Agreement, for the defendants' property is necessary to protect the plaintiff's interest").

Here, Borrower Defendants expressly consented to the appointment of a receiver in the event of a default in at least two Loan Documents: the Loan Agreement and Deeds of Trust. Under the Loan and Deed of Trust, pursuant to the respective "Rights and Remedies on Default," MREL has the right to have a receiver appointed to:

> take possession of any or all of the Property, with the power to protect and preserve the Property, to operate the Property preceding foreclosure or sale, to collect the Proceeds from the Property and apply the Proceeds, over and above cost of the receivership, against the Indebtedness. Beneficiary may apply to any court of competent jurisdiction for the appointment of a receiver or receivers for the Property and of all the earnings, revenues, rents, issues, profits and income therefrom, ex parte, without notice, and without regard to the sufficiency or value of any security for the obligations secured hereby or the solvency of any party bound for its payment, the expenses of which shall be secured by this Deed of Trust. The receiver may serve without bond if permitted by law.

(Dkt. 1-1 at 11.1(h); Dkt. 1-3, ¶ 13.1(g).)

### 2. MREL Has a Valid Claim and Is Likely to Succeed.

A receiver is proper here, as MREL is overwhelmingly likely to succeed on the merits of its claims for breach of the Loan. *See N.Y. Life*, 755 F. Supp. at 292 ("[I]n appointing receivers federal courts consider ... plaintiff's probable success in the action"). The Rasmussen Declaration

STOEL RIVES LLP
ATTORNEYS AT LAW
SACRAMENTO

EX PARTE MOTION FOR ORDER APPOINTING RECEIVER

-8-

CASE NO. 1:24-CV-01241-KES-SAB

126366697.3 0053564-00657

comprehensively addresses Borrower Defendants' continuing defaults under the Loan Documents and Borrower Defendants' failure to timely pay in response to MREL's Notice of Default and Acceleration of Debt. The amounts due and owing to MREL as a result of those defaults continue to increase on a daily basis.

### 3.    MREL Is Entitled to a Receiver to Protect Its Property Interests and Collateral From Irreparable Harm.

A court is "well within its discretion" to appoint a receiver where property constituting collateral is "in danger of substantial waste and risk of loss" or "may become insufficient to discharge the debt which it secures." *Canada Life Assur. Co.*, 563 F.3d at 845. Borrower Defendants and its affiliates are experiencing extreme financial difficulties and will not be able to continue operating without additional funds, including being unable to maintain post-harvest activities essential to the maintenance and operation of the MREL Receivership Property. (Rasmussen Decl., ¶ 26, Ex. 1.) If the MREL Receivership Property is not cared for, substantial and long-lasting damage is likely to occur in the next several weeks and beyond. (*See* Rasmussen Decl., ¶¶ 25-27.) The MREL Receivership Property, including Proceeds, are under an immediate threat of damage, thereby threatening the value of MREL's collateral and its ability to recover. A receivership is immediately necessary to prevent Borrower Defendants from further eroding MREL's Receivership Property and undermining prospects for repayment.

### 4.    Borrower Defendants' Financial Distress Requires the Court to Appoint a Receiver.

A "foremost factor" in whether a receiver should be appointed is the defendant's doubtful financial standing and imminent insolvency. *Canada Life Assur. Co.*, 563 F.3d at 844-45; N.Y. Life, 755 F. Supp. at 292 ("Most important among the factors are the adequacy of the security and the financial position of the mortgagor"). The Borrower Defendants and its affiliates are in financial distress. Borrower Defendants and/or their affiliated farming entities have stipulated and agreed to the appointment of a receiver in two related actions involving real property collateral in their integrated farming operations (RJN, Exs. 1-3.) and acknowledged that "Borrowers face significant cash flow issues and will not have sufficient case to maintain, preserve, and care for the Property,

STOEL RIVES LLP
ATTORNEYS AT LAW
SACRAMENTO

EX PARTE MOTION FOR ORDER
APPOINTING RECEIVER                    -9-              CASE NO. 1:24-CV-01241-KES-SAB
126366697.3 0053564-00657

1  including but not limited to trees and crops" and that "[s]uch actions would cause damage to the

2  Property, including causing the trees (which make up a significant value of the Property) to be

3  damaged or die." (RJN, Ex. 1 at 4:1-4.) There is no evidence to suggest that Borrower Defendants'

4  financial condition will improve at all, let alone enough to manage, operate, and appropriately care

5  for the MREL Receivership Property.

6  **B.      THE COURT SHOULD GRANT MREL A PRELIMINARY INJUNCTION.**

7          "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on

8  the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the

9  balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Nat'l*

10  *Res. Def. Council, Inc.*, 55 U.S. 7, 20 (2008). In determining whether to grant a temporary

11  restraining order or preliminary injunction, courts in this Circuit consider four factors: (1) whether

12  the applicant is likely to succeed on the merits of their claim; (2) whether the applicant is likely to

13  suffer irreparable harm absent the preliminary injunction; (3) whether the equities weigh in favor

14  of the proposed injunction; and (4) whether the preliminary injunction is in the public interest. *Id.*

15  at 20.

16          The evidence laid out above establishes each factor weighs in favor of MREL and the

17  Court's issuance of immediate injunctive relief. The amounts due and owing under the Loan

18  Documents, the defaults thereunder, and the impossibility to cure any such defaults given the size

19  of the obligations also establish MREL's likeliness to succeed on the merits of its claim.

20  Additionally, MREL has also shown above that it is likely to suffer irreparable harm in the absence

21  of relief, and that the balance of the equities tips in its favor. Finally, once the Court appoints a

22  receiver herein, an injunction benefits the public interest because the receiver needs to be able fulfill

23  its duties and obligations without potentially disruptive interference.

24  **C.      IF A BOND IS REQUIRED, A NOMINAL UNDERTAKING IS APPROPRIATE.**

25          Security is required for issuance of a preliminary injunction. Fed. R. Civ. P. 65(c).

26          **1.      The Court Should Order a Nominal Undertaking.**

27          In light of the Borrower Defendants' financial distress, MREL proposes a nominal

28  undertaking to redress Defendants from any damage that may result from the Court's appointment

STOEL RIVES LLP
ATTORNEYS AT LAW
SACRAMENTO

EX PARTE MOTION FOR ORDER
APPOINTING RECEIVER                    -10-              CASE NO. 1:24-CV-01241-KES-SAB

126366697.3 0053564-00657

of a temporary receiver and issuance of a preliminary injunction. Any damage Borrowers' assets may suffer as a result of the Court's appointment of a temporary receiver and issuance of a preliminary injunction would not harm Borrowers, but MREL. An undertaking should be nominal.

### 2.    Receiver's Bond.

Under L.R. 232(i), the receiver must maintain an undertaking. Pursuant to L.R. 151(h), MREL, upon issuance of the Court's order appointing the receiver, proposes it post a cash deposit and submit a proposed written instrument, "executed and acknowledged by the party, setting forth the conditions on which the deposit is made, and the fact that the Clerk may collect or sell the obligations and apply ... the cash deposited[] in the case of default." L.R. 151(h).

### D.    THE COURT SHOULD APPOINT PHILLIP CHRISTENSEN OF AGRIGLOBE LLC AS RECEIVER.

MREL requests that Phillip Christensen of Agriglobe LLC (the "Receiver") be appointed as receiver herein. The Declaration of Phillip Christensen ("Receiver Decl.") supporting his proposed receivership is attached hereto, which, among other things, provides for a general overview of Agriglobe and a proposed fee schedule, and attaches the proposed Receiver's curriculum vitae. These documents demonstrate that the proposed Receiver is experienced in the maintenance, management, and daily operation of properties similar to the MREL Receivership Property.

Mr. Christensen is a proper and competent receiver here. He is neither a party nor an attorney for a party to this action; has no interest in the action; and is not related to any judge of this Court. He will accordingly act as an agent of the Court and not of any party, carrying out its receivership duties neutrally and "for the benefit of all who may have an interest in the receivership property," and it will hold "assets for the court," not for any party. He will provide, as necessary, an inventory, monthly reports, and a final report. *See* L.R. 232(e)(1)-(2).

### IV.    CONCLUSION

Based upon all of the foregoing factors, pursuant to Federal Rule of Civil Procedure 66 and L.R. 232, MREL respectfully submits that a receiver must be appointed to operate, preserve, and protect the MREL Receivership Property pending a resolution of the above-captioned action. MREL also respectfully request the entry of a preliminary injunction to prevent parties from

1  interfering with the Receiver or the MREL Receivership Property during the pendency of this

2  receivership.

3        WHEREFORE, in view of the foregoing, the Plaintiff hereby request that the Court enter

4  an Order:

5        (i)     appointing Phillip Christensen as the Receiver to operate, preserve, and protect the

6  MREL Receivership Property, to collect the rents from and pay the expenses of the MREL

7  Receivership Property (including the fees and expenses of the Receiver), to turn over the net rents

8  (if any) to MREL on a monthly basis, and to take such other and further actions with regard to the

9  MREL Receivership Property as are permitted by the Order and applicable law;

10        (ii)    for an order calendaring a hearing on the continuation of the receivership and order

11  to show cause as to why a preliminary injunction should not issue. See L.R. 232(c); L.R. 231;

12        (iii)   enjoining the Borrowers and Guarantors, their officers and directors, vendors, and

13  any and all third parties from interfering with the Receiver or the MREL Receivership Property

14  during the pendency of the receivership; and

15        (iv)   providing MREL with such other and further relief as the Court deems just and

16  appropriate.

17

18  DATED:  November 14, 2024             STOEL RIVES LLP

19

20                            MICHAEL B. BROWN, Bar No. 179222
                          michael.brown@stoel.com

21                            THOMAS A. WOODS, Bar No. 210050
                          thomas.woods@stoel.com

22                            BENJAMIN J. CODOG, Bar No. 307034
                          ben.codog@stoel.com

23                            MICHELLE J. ROSALES, Bar No. 343519
                          michelle.rosales@stoel.com

24

25                            *Attorneys for Plaintiff*
                          METLIFE REAL ESTATE LENDING, LLC

26

27

28

STOEL RIVES LLP
ATTORNEYS AT LAW
SACRAMENTO

EX PARTE MOTION FOR ORDER
APPOINTING RECEIVER          -12-          CASE NO. 1:24-CV-01241-KES-SAB
126366697.3 0053564-00657