1
2
3
4
5
6
7
8
9
10

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| METLIFE REAL ESTATE LENDING, LLC, a Delaware limited liability company,<br><br>        Plaintiff,<br><br>   v.<br><br>PANOCHE PISTACHIOS, LLC, a California limited liability company; WILLOW AVENUE INVESTMENTS, LLC, a California limited liability company; FARID ASSEMI, an individual; FARSHID ASSEMI, an individual; DARIUS ASSEMI, an individual; and DOES 1-100,<br><br>        Defendants. | Case No. 1:24-cv-01241-KES-SAB<br><br>**ORDER GRANTING MOTION FOR ORDER APPOINTING RECEIVER AND FOR PRELIMINARY INJUNCTION**<br><br>Action Filed: October 11, 2024<br>Trial Date: Not Set |

-1-

Upon due consideration of the Plaintiff's Ex Parte Motion for Order Appointing Receiver and for Preliminary Injunction ("MREL Receivership Motion"), the Complaint (as defined below), the Declaration of Jeremy Rasmussen ("Plaintiff Declaration"), and the Declaration of proposed receiver Phillip Christensen ("Receiver Declaration"), the entered Orders Granting Motion for Order Appointing Receiver and for Preliminary Injunction in the related Case No. 1:24-CV-01261-KES-SAB (Dkt. 45) and Case No. 1:24-CV-01230-KES-SAE (Dkt. 39), and good cause appearing therefor, and the Court being advised that the relief granted herein has been agreed to by both (i) the Plaintiff and (ii) the Borrower-Owners (as defined below), and overruling any objections raised by any other parties,

**The Court hereby FINDS as follows**:

A.      Appointment of a receiver is appropriate pursuant to Federal Rules of Civil Procedure 66; Local Rule 232; and the Court's inherent equitable power to order the appointment of a receiver under Federal law.

B.      Phillip Christensen of Agriglobe LLC is not interested in this action and is competent and qualified to act as receiver.

C.      Good cause exists for the appointment of a receiver in order to preserve perishable agriculture and property and to maximize the recovery to creditor-Plaintiff through the orderly sale of certain of the assets of Defendants PANOCHE PISTACHIOS, LLC and WILLOW AVENUE INVESTMENTS, LLC ("Borrower-Owners"), and for the collection of obligations owed to Borrower-Owners on account of the MREL Receivership Property (defined below).

D.      Certain costs may be incurred by either the Receiver (as defined below) or any receiver appointed by or on behalf of The Prudential Insurance Company of America and PGIM Real Estate Finance (the "Prudential Receiver" and "Prudential," respectively), in the administration of their respective receivership estates, that are properly allocable in whole or in part to the other estate. Each such receiver shall consult in an effort to reach joint agreement on allocation and to pay any such agreed allocated cost amount. Absent agreement, any dispute over which costs (or partial costs) shall be paid by either the Receiver's receivership estate or the

receivership estate of Prudential's Receiver shall be determined by the Court, after notice and a hearing.

E.     For all other costs borne by the Receiver that are properly allocable to property other than the MREL Receivership Property (as defined below) (the "non-Receivership Property"), all rights are reserved to the Receiver to seek payment from or surcharge against such entities or properties, with all defenses and rights by such entities (or their property) expressly reserved.

F.     Good cause exists for the entry of a preliminary injunction restraining and enjoining all Defendants not limited to Borrower-Owners and their agents, affiliates, partners, property managers, employees, assignees, successors, representatives, and all persons acting under and/or in concert with them from committing or permitting waste of the MREL Receivership Property (defined below), including any misuse of cash from the operations of Borrower-Owners that are part of the MREL Receivership Property; from removing, transferring, encumbering, or otherwise disposing of the MREL Receivership Property; and from interfering with the receiver in the discharge of the Receiver's duties.

Having found the foregoing,

**IT IS ORDERED**:

1.     Phillip Christensen ("Receiver") is appointed as a general receiver.

2.     The Receiver is awarded exclusive possession and control over the "MREL Receivership Property" defined as follows:

    a.  Real Property:

        (i)     That property Subject to the Deed of Trust, Security Agreement, Assignment of Rents and Leases and Fixture Filing dated September 27, 2019, and recorded on September 27, 2019, with the Kern County Recorder's Office as Document No. 219126498, as amended by that certain Consent to Transfer and Assumption Agreement dated March 8, 2023, and recorded on March 9, 2023, with the Kern County Recorder's Office as Document No. 223027305 (together, "Deed of Trust"), not limited to APNs:

           239-070-48-01
           239-340-01-00-2
           239-340-13-00-7
           239-340-14-00-0
           239-340-42-00-1
           239-340-44-00-7

239-340-46-00-3
103-100-21
103-100-20
103-100-19
103-040-37

Along with all other property associated with said APNs not limited to Proceeds, Crops, Water Rights, Improvements, Intangibles, Proceeds (as those terms are defined therein) and that property described in said Deed of Trust.

b.  Other Collateral

(i)   That Property subject to and identified in the filed UCC Financing Statement Filing, any amendments thereto, and its "Schedule 1," discussed in the Complaint and Declaration of Jeremy Rassmussen, UCC Financing Statement, filing number: 19-7740361240, not limited to the property identified therein.

c.  All rights, entitlements, leases, interests, contracts, contracts for sale, and business affairs associated with and relating to the MREL Receivership Property (including real and personal property).

d.  For the avoidance of doubt, the "MREL Receivership Property" excludes any of the Farming Defendants' equipment that is not (a) a fixture affixed to the real property or (b) all wells, irrigation and drainage pumps, motors, pipes, sprinklers, drip line and emitters, filters, water measurement, meters and control structures and other irrigation equipment and frost protection related equipment.

3.    Until further order of the Court, the MREL Receivership Property and any disputes related to the MREL Receivership Property shall remain under this Court's exclusive jurisdiction.

4.    The Receiver shall not be subject to the control of any of the parties to this matter but shall be subject only to the Court's direction in the fulfillment of the Receiver's duties.

**I.  Power and Duties of the Receiver**

The Receiver shall have the following authority, powers and duties:

5.    During the pendency of the receivership, the Receiver is authorized and directed to take possession of, manage, control and collect all present and future MREL Receivership Property, wherever located (including such MREL Receivership Property as may be in the possession or control of third parties). This includes that the Receiver shall be authorized to cultivate, prune,

fertilize, irrigate and take all such actions as in his business judgment are necessary to preserve the permanent plantings growing on the MREL Receivership Property and to prepare for and produce a 2025 crop thereon.  The Receiver is authorized to conduct limited operations of the MREL Receivership Property if, in his business judgment, the benefit of such operations would exceed the cost.

6.      The Receiver shall have exclusive right to possession of the MREL Receivership Property and may (in accordance with applicable state law) enter any other property where the MREL Receivership Property may be located in order to recover such MREL Receivership Property.

7.      Subject to this Court's approval, the Receiver is authorized to sell or otherwise liquidate or dispose of any or all of the MREL Receivership Property by public or private sale or such other method as deemed appropriate by the Receiver exercising business judgment. All sales of MREL Receivership Property shall be "as is" and "with all faults," free and clear of liens, claims and encumbrances, without representations or warranties and without recourse. Subject to the foregoing:

a.      The Receiver is authorized to employ a marketing agent to list and market from time-to-time any or all of the MREL Receivership Property, in whole or in part, and to enter into such agreements to sell any portion of the MREL Receivership Property on a contingency commission arrangement based on the close of any such sale, provided that each such agreement, the sale price, the commission, and the sale procedures to be employed shall be as authorized by and subject to the terms, covenants, and conditions contained in the Deed of Trust along with all the Loan Documents (as those terms are defined in Plaintiff's complaint), shall be subject to Plaintiff's prior written consent, which may be given or withheld in the exercise of Plaintiff's sole opinion and judgment, and shall be subject to approval and confirmation by this Court. Plaintiff and Defendants shall be kept apprised of the Receiver's efforts to market and sell the MREL Receivership Property. The Receiver is further authorized to retain other professionals that the Receiver determines in his reasonable discretion to be necessary to effectively market and sell the MREL Receivership Property including, but not limited to, real estate appraisers, environmental

consultants, and development consultants. All real estate broker fees to be paid in connection with the Receiver's sale of the MREL Receivership Property are subject to the prior approval of Plaintiff and this Court. Sales of real property shall be in accordance with 28 U.S.C. § 2001;

      b.     Except as ordered by the Court after notice and a hearing, all sales of real property shall be subject to the express written approval of Plaintiff;

      c.     [RESERVED]

      d.     The Receiver may sell personal property that constitutes MREL Receivership Property, including equipment and any farm products/crops now or hereafter growing on the MREL Receivership Property and other personal property that constitutes MREL Receivership Property at one or more commercially reasonable, professionally conducted auctions without any requirement to obtain an appraisal of such MREL Receivership Property or Court order confirming such sales; and

      e.     The Receiver may sell inventory, equipment and other personal property that constitutes MREL Receivership Property outside the ordinary course of Borrower-Owners business(es) with an aggregate price not more than $50,000 to any one buyer, without further order of the Court, upon prior written approval from Plaintiff.

      8.     The Receiver may contract for, hire and terminate agents, employees, appraisers, guards, clerks, accountants, liquidators, auctioneers, attorneys and management companies and consultants without cause, to administer the MREL Receivership Property, assist the Receiver in his duties, and to protect the MREL Receivership Property as the Receiver deems necessary; purchase insurance, materials, supplies and services and pay therefore at the usual rate and prices out of funds that shall come into the Receiver's possession; pay the reasonable value of said services out of the proceeds of the estate; and no risk or obligation incurred by said Receiver shall be the personal risk or obligation of the Receiver, but shall be the risk or obligation of the MREL Receivership Property, subject to applicable federal law. For the avoidance of any doubt, the Receiver is not authorized under this Order to terminate or modify any contract that explicitly benefits other real estate lender collateral.

9.      The Receiver may engage a locksmith for the purposes of gaining entry to any of the MREL Receivership Property through any security system to obtain any property or documents to which the Receiver is entitled pursuant to this Order. The Receiver may have locks or security codes changed, or have keys created that will work for the existing locks.

10.      The Receiver may demand, collect, and receive all receipts, rents, profits, monies, security deposits, advance deposits, funds and payments arising from the MREL Receivership Property, as a whole or as to any and all improvements thereon, and take all actions necessary or appropriate in furtherance thereof, including commencing any court actions, lawsuits, or other proceedings deemed appropriate by the Receiver in order to protect MREL Receivership Property.

11.      The Receiver shall allow representatives or agents of U.S. Bank reasonable access to the Receivership Property for the purpose of inspecting and/or appraising equipment and removing equipment that does not constitute Receivership Property ("Bank Equipment").

12.      The Receiver may lease Bank Equipment from U.S. Bank for use in connection with his operation of the Receivership Property, on terms acceptable to the Bank and the Receiver or may ask that the Bank Equipment be removed, at the election of the Receiver.

13.      The Receiver may establish bank accounts at any bank the Receiver deems appropriate for the deposit of monies and funds collected and received in connection with the administration of the MREL Receivership Property, provided that all funds on deposit are insured by an agency of the United States government.

14.      Upon presentation of a conformed copy of this Order to any third party, including but not limited to banks or depositories owing performance of any obligation or duty to Plaintiff with respect to the MREL Receivership Property, such third parties shall render any performance or duties with respect to the MREL Receivership Property directly to the Receiver.

15.      The Receiver may seek discovery pursuant to the Federal Rules of Civil Procedure and any applicable local rules of the Court of any books and records of Borrower-Owners' affiliates or other persons or entities that the Receiver deems necessary or desirable to carry out the Receiver's duties, including the books and records of Assemi Group, Inc. ("AGI") concerning or related to Borrower-Owners.

16.    The Receiver shall execute and prepare all documents and perform all acts, including entering into contracts, operating licenses, or signing checks or initiating and processing electronic funds transfers in the Receiver's own name, which are necessary or incidental to preserving, protecting, managing, controlling and/or liquidating the MREL Receivership Property.

17.    The Receiver may compromise debts related to the MREL Receivership Property and do all things and to incur the risks and obligations of similar businesses operating the MREL Receivership Property. Subject to applicable federal law, no risk or obligation incurred by the Receiver shall be at the personal risk or obligation of the Receiver but shall be the risk or obligation of the MREL Receivership Property.

18.    The Receiver may contact and bring and prosecute all proper actions for collection from any debtor on the accounts receivable for the MREL Receivership Property ("Accounts Receivable Debtors") and advise them not to send further accounts receivable payments to Borrower-Owners and instruct the Accounts Receivable Debtors to send any and all payments directly to the Receiver.

19.    Net proceeds from the sale of MREL Receivership Property, and other money coming into possession of the Receiver and not expended for any of the purposes herein authorized, shall be held by said Receiver for the payment of the obligations of Borrower-Owners to Plaintiff and other creditors, subject to such orders as the Court may hereinafter issue as to its disposition.

20.    The Receiver may institute ancillary proceedings in this State or other states and countries, prosecute and tender all suits or insurance claims, and pursue all remedies available by law as is necessary to preserve and protect the MREL Receivership Property and ensure compliance with the Receiver's authority. The Receiver may bring and prosecute all proper action for collection of payments, rent and lease payments due, if any, on the MREL Receivership Property, as well as necessary actions and proceedings for the removal of tenants or lessees in default for any rental or lease agreement, or any other persons, from the MREL Receivership Property, and may bring and prosecute all proper actions for the protection of the MREL Receivership Property or recovery thereof.

//

21.     Receiver, as an agent of the Court, shall be entitled to the assistance of law enforcement officials when taking possession, or at any other time during the term of the MREL Receivership, if in the opinion of Receiver, such assistance is necessary to preserve the peace and protect the MREL Receivership Property, without further order from the Court.

22.     The Receiver may exclude any person or entity who does not have a lease or rental agreement from possession of the MREL Receivership Property, or any portion thereof.

23.     The Receiver may assume, extend, terminate, or modify any pre-receivership contracts or agreements, including unexpired leases, relating to the MREL Receivership Property, and/or reject such contracts in the Receiver's sole judgment and discretion. For the avoidance of any doubt, the Receiver is not authorized under this Order to terminate or modify any contract that explicitly benefits other real estate lender collateral.

24.     Unless otherwise ordered by the Court, the Receiver is not obligated to undertake and will have no liability for any remediation or cleanup with respect to hazardous materials presently existing under, on or about the real property. The Receiver is authorized, in its sole discretion, to initiate environmental due diligence, inspections, or other environmental monitoring, and shall have no liability for any hazardous materials presently existing under, on or about the real property.

25.     The Receiver shall be under no obligation to complete or file tax returns on behalf of Defendants for income or other taxes arising before the date of this order. The Receiver shall otherwise comply with all applicable laws and regulations relating to tax-reporting requirements. The Receiver shall furnish Defendants with such access to books and records within the Receiver's custody or control as reasonably may be necessary for Defendants to complete and file tax returns on their own behalf.

26.     [RESERVED]

27.     Any utility company providing services to the MREL Receivership Property, including gas, electricity, water, sewer, trash collection, telephone, cable, communications Wi-Fi, Internet, or similar services, shall be prohibited from discontinuing and prohibited from failing to comply with any request by the Receiver to, and are prohibited from refusing to, reinstitute service

to the MREL Receivership Property based any non-payment by Borrower-Owners prior to the Receiver's appointment by the Court based upon unpaid bills incurred by Borrower-Owners. Further, if requested by the Receiver, such utilities shall be prohibited from demanding that the Receiver deposit additional funds in advance to maintain or secure such services. New accounts under the name of the MREL Receivership may be established within 30 days.

28.     Any insurance company, carrier, policy issuers, shall be prohibited from discontinuing policies relating to the MREL Receivership Property, and are prohibited from refusing to reinstate service to the MREL Receivership Property based upon any non-payment by Borrower-Owners prior the Receiver's appointment by the Court based upon unpaid bills incurred by Borrower-Owners. Further, Receiver is authorized, and any funds needed shall be advanced by Plaintiff, for any insurance required in Receiver's reasonable business judgment including such errors and omissions covered necessitated by this case.

29.     The Receiver may analyze the books, records, and files that relate to the MREL Receivership Property of (a) Borrower-Owners and (b) on order of the Court, following notice to the affected party, those of AGI or other person or entity with respect to Borrower-Owners, including bank account and accounting records to determine the sources and uses of cash, accounts, and asset sale proceeds, to investigate transfers of funds by or to Borrower-Owners, and to engage in other forensic accounting as deemed appropriate to the Receiver.

30.     The Receiver, on order of the Court, following notice and a hearing, and on the conditions or terms that the Court considers just and proper, may abandon any MREL Receivership Property that is burdensome to the Receiver or is of inconsequential value or benefit. Property that is abandoned shall no longer constitute MREL Receivership Property.

31.     The Receiver, or any party to this action, may from time to time, and on due notice to all parties, make application to the Court for further orders instructing said Receiver or expanding the Receiver's authority.

**II.  Receiver Collection and Distribution of Crop Proceeds**

32.     This Section II governs the collection and disbursement of proceeds arising from crops grown in 2023 and 2024 on the MREL Receivership Property (collectively, the "Proceeds").

To the extent of any inconsistency between the provisions of this Section and the balance of this Order, this Section shall prevail.

33.     The Receiver is authorized and directed to collect any unpaid amount of the Proceeds from Defendants' 2023 and 2024 Crops grown on the MREL Receivership Property, and to disburse such unpaid Proceeds as permitted under this Order. For avoidance of any doubt under this Section II, all parties-in-interest reserve their rights and remedies with respect to their interest, if any, in any payment that has been made of any portion of the Proceeds.

34.     The Defendants are hereby ordered to promptly pay-over to the Receiver any and all such Proceeds paid to or otherwise received by them. In the event that the Defendants collect any Proceeds, from whatever source, they shall pay such Proceeds to the Receiver, who shall thereafter hold and disburse them in accordance with this Order.  For the avoidance of doubt, "Proceeds" do not include either: (a) amounts previously collected by Borrower-Owners and expended in their operations or in payment of their obligations to creditors; or (b) proceeds of crops grown on real property either (i) encumbered by senior deeds of trust for the benefit of Prudential or other secured lenders, or (ii) that is not encumbered by deeds of trust or mortgages (collectively, the "Other Lender Proceeds"); or (c) amounts previously collected by creditors.

35.     The Receiver shall coordinate his collection of Proceeds with Prudential Receiver's collection of Other Lender Proceeds, including as follows:

        a.   The Receiver and Prudential Receiver shall send joint payment direction letters or similar letters (each, a "Demand") directing any processors or other third parties holding or owing Proceeds or Other Lender Proceeds (the "Processors" and each a "Processor"), to cease sending Proceeds and/or Other Lender Proceeds to the Borrower-Owners or any other third party and instructing such Processors to send any and all Proceeds directly to Receiver and any Other Lender Proceeds directly to the Prudential Receiver. The Processors are directed to comply with Demands and shall have no liability to the Borrower-Owners, Plaintiff, Prudential, U.S. Bank, or other third parties for the payment of

Proceeds or Other Lender Proceeds to Receiver or Prudential's Receiver in accordance with such Demand and during the term of this Order.

b.  The amounts of Other Lender Proceeds included in each Demand will be based on the spreadsheet attached as Exhibit C, as the same may be amended by mutual agreement between the Receivers based on updated information from the Processors and/or the Borrower-Owners (including information on Prudential or U.S. Bank shares of applicable final "bonus payments" related to the Other Lender Proceeds from the Processors). All other amounts due from the Processors under a given Demand shall be paid to the Receiver. The amounts set forth on Exhibit C are a guide for making Demands on the Processors. Each Processor payment collected by the Receivers shall be subject to true-up upon a reconciliation, to be made within thirty (30) days following receipt of such payment, based on the Receivers' comparison of the amount of such payment to the actual amount of Proceeds and/or Other Lender Proceeds they calculate should have been paid by the Processor.  If the Receivers cannot agree on such reconciliation amount, the Court will resolve the dispute upon joint motion.  Any true-up payment due as a result of such reconciliation shall be made by the receiver from whom it is due to the other receiver promptly upon agreement or Court determination.  For the avoidance of doubt, if the aggregate amount of payments made by a Processor on a given date is less than the contractual amount due, then each Receiver may pursue the Processor for his share of the shortfall.

c.  In the event a Processor refuses to allocate Proceeds and Other Lender Proceeds, and disburse such amounts to the Receiver and the Prudential Receiver, respectively, as directed in a Demand, then all such Proceeds and Other Lender Proceeds due from such Processor shall be paid directly to the Prudential Receiver for payment to Receiver following reconciliation in accordance with the preceding Paragraph.

      d.  To the extent Receiver comes into possession of Other Lender Proceeds, he shall remit such proceeds to the Prudential Receiver.

      e.  Nothing herein is intended to require, direct, or compel any Processor to comply with a Demand or otherwise pay over Proceeds or Other Lender Proceeds to the Receiver or the Prudential Receiver, as applicable, if such Processor is not otherwise obligated to make such payment.

36.     The Receiver shall collect and hold the Proceeds in a Receivership account in trust for creditors with security interests in such Proceeds, to be disbursed by the Receiver only upon further order of the Court. Prior to disbursement, the existing security interests of Plaintiff, and any other secured creditor (including U.S. Bank, as applicable) shall attach to such Proceeds with the same validity, extent, and priority as they had on the 2023 and 2024 Crops and the products and proceeds thereof prior to the appointment of the Receiver.  The Receiver shall have no right to surcharge the Proceeds and any Receiver's Certificate issued hereunder shall be junior in priority to the security interest of the secured creditors in the Proceeds.

37.     The Receiver shall keep and maintain records allowing him to determine the amounts and sources of all Proceeds and any Other Lender Proceeds he collects or otherwise receives, and shall provide a monthly written report, with such backup as is reasonably requested, to each of Plaintiff, and any other party in interest (including U.S. Bank and the Prudential Receiver, as applicable) requesting such report, detailing:

      a.  the total Proceeds and any amount of Other Lender Proceeds collected during the reporting period; and

      b.  the sources of Proceeds, including the property on which the subject crops were grown and the year in which the subject crops were harvested.

      c.  the amounts of Proceeds and any amount of Other Lender Proceeds received from the Other Accounts Receivable, listed on a field-by-field basis, by other real estate lenders, and by the year in which the subject crops were harvested; and any proposed disbursement of such Proceeds.

//

-13-

### III. Receivership Expenses

38.     The Receiver shall charge the amount of $30.00/acre/month for planted acres and $5.00/acre/month for fallow, and tree removal acres, subject to annual adjustment upon notice to the parties, plus expenses as identified and applied for and as approved by the Court, as set forth in the Declaration of Phillip Christensen filed in support of the MREL Receivership Motion, paragraph 8 thereto, which is subject to annual adjustment upon notice to the parties.

39.     The Receiver shall pay the operating expenses of the MREL Receivership Property from the income generated by the MREL Receivership Property, and to the extent MREL Receivership Property income is inadequate to pay the operating expenses, may borrow money from Plaintiff ("Receivership Advances").

40.     Plaintiff shall not be obligated to make Receivership Advances, but any such MREL Receivership Advances shall be added to the obligations owed by Borrower-Owners to Plaintiff. Receivership Advances shall bear interest at the rate provided under the Loan Documents (as defined in the Complaint) and shall be paid to the extent of available MREL Receivership Property no later than upon approval of the Receiver's final report and account. If there is insufficient MREL Receivership Property to repay the Receivership Advances in full, Borrower-Owners and the Defendant Guarantors named in this action shall have sole liability to repay such deficiency to the extent described in the Complaint and accompanying Guaranty Agreements (as defined in the Complaint), and the Receiver shall have no liability to repay such deficiency.

41.     Except as set forth in paragraph 40 above, Receivership advances relating to accrued Pre-Receivership expenses necessary for the continuation of the Receivership as well as immediate emergent Post-Receivership expenses as deemed necessary by the Receiver shall be advanced by the Plaintiff to assure orderly operation and preservation of the Receivership Property.

42.     The Receiver may issue to Plaintiff, as Collateral Agent, Receiver's Certificates to evidence Receivership Advances. Except as provided in Section II, such Receiver's Certificates shall be liens against the MREL Receivership Property that have priority over all other liens, interests and claims against the MREL Receivership Property on a priority repayment basis, except

for fees and costs approved under Paragraph 38. The original Certificates shall be delivered to Plaintiff, to be filed and/or recorded in Plaintiff's discretion.

43.     Within 30 days following entry of this Order, the Receiver shall prepare an operating budget for the receivership (the "Budget") and submit it to Plaintiff for approval, which must include all anticipated fees, expenses, and disbursements of the MREL Receivership Property.

44.     The Receiver is authorized to make payment for any bond, fees and costs, and for the Receiver's fees and fees and costs of professionals, by filing a notice of intent to compensate professionals and serving such notice, together with a reasonably detailed description of the time periods, services and amount requested, on the parties or their counsel, if applicable, creditors having liens, security interests or other interests on or in the MREL Receivership Property, and anyone else filing an appearance in this case. If no party in interest objects to such notice within 10 calendar days of its filing and service, the fees and costs shall be deemed approved as being fully and finally earned without further order or leave of the Court. If a party objects, the party will serve a written objection on the Receiver stating the nature and scope of the objection. Upon receipt of an objection, the Receiver and the objecting party must first attempt to resolve the objection through negotiation. If the objection cannot be so resolved, the objecting party may file its objection in Court within 7 days after the date of the objection. Unless otherwise agreed by the Receiver, any objection not filed within 7 days after the date of service of the objection is deemed waived. Only those portions of the fees and costs that are the subject of a timely objection will be withheld from payment until the objection is resolved, and all other portions of the fees and costs will be deemed approved without further order or leave of the Court. The approved fees and costs of the Receiver and its professionals shall be paid from the gross receipts derived from the MREL Receivership Property and shall be a first-priority lien on MREL Receivership Property. If MREL Receivership Property is not sufficient to pay the Receiver's fees and its professional's fees as presented, the Plaintiff shall advance funds to the Receiver sufficient to pay such approved fees and costs. Any such advance will be considered a Receivership Advance.

45.     The Receiver may employ a law firm as Receiver's legal counsel ("Receiver's Counsel") in this matter, as reasonably necessary to accomplish the purposes of this Order.

1   Compensation to Receiver's Counsel shall be based on a blended hourly rate not to exceed $800.00

2   per hour, subject to annual adjustment upon notice to the parties. Receiver's Counsel shall be

3   entitled to reimbursement of all reasonable costs and expenses incurred on behalf of the

4   Receivership estate. The attorneys' fees and cost incurred by the Receiver's Counsel may be

5   included in the administrative costs and expenses to be paid to the Receiver in accordance with

6   paragraph 36 of this Order.

7                                        **IV.  Financial Reporting**

8          46.    To the extent feasible, the Receiver shall, within thirty (30) days of qualification

9   hereunder, file in this action an inventory of all property of which the Receiver has taken possession

10  pursuant to this Order and shall conduct periodic accountings thereafter.

11         47.    Beginning on the second Thursday following approval of the Budget and weekly

12  thereafter, the Receiver shall provide the Plaintiff and Defendants PANOCHE PISTACHIOS, LLC

13  and WILLOW AVENUE INVESTMENTS, LLC with weekly reporting regarding the MREL

14  Receivership Property's performance under the Budget, including a variance report with

15  explanations for any negative variance on a line-item basis. The Receivership Advances authorized

16  above shall be consistent with the Budget. Total disbursements for any particular measurement

17  period on an aggregate, accumulated, and rolling basis, shall not exceed any line item in an

18  approved budget by more than 10 percent of Budgeted amounts, without the written consent of the

19  Plaintiff. The Receiver and the Plaintiff may amend the Budget from time to time by agreement.

20         48.    The Receiver shall provide the Court, the parties or their counsel, if applicable, and

21  anyone else filing a notice of appearance in the case, monthly reports on the operations and financial

22  affairs of the MREL Receivership Property (each, a "Report"). Each Report shall be due by the last

23  day of the subsequent month and shall include: (a) a balance sheet; (b) a statement of income and

24  expenses; (c) a cash flow statement; (d) a statement of accrued accounts receivable of the receiver,

25  with amounts considered uncollectable; (e) a statement of accounts payable of the receiver,

26  including professional fees; (f) MREL Receivership Property sale progress reports; and (g) a

27  narrative summary of the operations, if any, of the MREL Receivership Property. The Receiver's

28

Report shall also include a copy of any Receivership Certificates issued during the period covered by the Report. The Receiver's first Report shall be a report of the first two months of operation.

49.     If there is insufficient insurance coverage on the MREL Receivership Property, the Receiver shall have thirty (30) business days to procure said insurance on the MREL Receivership Property, provided the Receiver has funds available to do so, and during said period, the Receiver shall not be personally responsible for claims arising or for the procurement of insurance. With respect to any insurance coverage, the Receiver, and other parties with insurable interest, shall be named as additional insureds on the policies for the period that the Receiver shall be in possession of the MREL Receivership Property. With respect to any property coverage obtained, Plaintiff shall be named as the mortgagee and loss payee.

**V.  Procedure for Notice and Hearing**

50.     To the extent this Order requires Court approval for any action herein, the Receiver may file a notice of proposed action and proposed Order, with a seven-day response time. If no party-in-interest files a written objection to the proposed action or form of Order within the Response Time, the Receiver may submit such Order for entry by the Court, supported by a declaration attesting that no objections were filed.

**VI.  Preliminary Injunction**

51.     Borrower-Owners and their respective owners, agents, partners, property managers, employees, assignees, successors, representatives, members, managers, creditors, lessors, customers, tenants, lienholders of MREL Receivership Property, and other persons seeking to establish or enforce any claim, right or interest against or on behalf of Borrower-Owners, and all others acting for or on behalf of such persons or acting under and/or in concert with them, including attorneys, trustees, agents, sheriffs, constables, marshals and other officers and their deputies, and their respective attorneys, agents, servants, and employees, excluding Plaintiff ("Restrained Parties") are hereby preliminarily enjoined as of the entry of this Order as follows:

a.     Restrained Parties shall not interfere with the Receiver in the performance of his duties, or commit or permit any waste of the MREL Receivership Property.

//

-17-

b.      Restrained Parties shall not transfer any part of the MREL Receivership Property, including cash proceeds of operations, to any third party for any purpose other than payment bona fide accounts payable to unaffiliated third parties of Borrower-Owners for their business operations.

c.      Restrained Parties shall not expend, disburse, transfer, assign, sell, convey, devise, pledge, mortgage, create a security interest in, encumber, conceal, or in any manner whatsoever deal in or dispose of the whole or any part of the MREL Receivership Property without prior Court order.

d.      [RESERVED]

e.      Restrained Parties shall not commence, prosecute, continue or enter into any suit or proceeding in the name or on behalf of Borrower-Owners with respect to property of the MREL Receivership Property.

f.      Restrained Parties shall not accelerate the due date of any obligation or claimed obligation, enforce any lien upon, or take or attempt to take possession of, or retain possession of, any of the MREL Receivership Property, or attempt to foreclose, forfeit, alter, or terminate any of Borrower-Owners' interest in MREL Receivership Property, including, without limitation, the establishment, grant or perfection of any security interest, whether such acts are part of a judicial proceeding or otherwise with respect to the MREL Receivership Property.

g.      Restrained Parties shall not use self-help or execute or issue, or cause the execution or issuance of, any court attachment, subpoena, replevin, execution or other process for the purpose of impounding or taking possession of or interfering with, or creating or enforcing a lien upon, any property, wheresoever located, owned by or in the possession of Borrower-Owners or the Receiver appointed pursuant to this Order or any agent appointed by said Receiver with respect to MREL Receivership Property; and

h.      Restrained Parties shall not do any act or thing whatsoever to interfere with the Receiver taking control, possession or management of the MREL Receivership Property or any other property subject to this MREL Receivership, or to in any way interfere with the Receiver, or to harass or interfere with the duties of the Receiver, or to interfere in any manner with the exclusive jurisdiction of this Court over the property and assets of the MREL Receivership estate, including

-18-

1   refusing to turn over MREL Receivership Property upon demand by the Receiver. Provided,

2   however, nothing in this paragraph shall prohibit any federal or state law enforcement or regulatory

3   authority from commencing or prosecuting an action against the MREL Receivership estate with

4   respect to MREL Receivership Property.

5         52.    The Restrained parties are hereby affirmatively required to provide full and prompt

6   access to the Receiver to all books and records, including banking records, relating to the MREL

7   Receivership Property.

8         53.    For the avoidance of doubt, the Preliminary Injunction set forth in this Section IV

9   shall not affect the rights of secured creditors under Section II above or restrain any secured party

10   from pursuing litigation to establish the priority of its security interests in or liens upon crops, crop

11   proceeds, or other Receivership Property.

12   **IT IS FURTHER ORDERED**,

13         Prior to appointment, the Receiver shall take the oath and file a bond in the sum of $5,000.00

14   to secure his faithful performance of his duties as the Receiver, in satisfaction of Local Rule 232(i).

15         Defendants shall have the right to apply to the Court for modification or dissolution of this

16   Order according to the Local Rules for the United States District Court for the Eastern District of

17   California.

18         A hearing on continuation of the receivership is set for January 13, 2025, at 1:30 P.M. (PT).

19   On or before December 16, 2024, the Parties shall file pleadings as to whether the receivership

20   should be continued. Any opposition shall be due by January 6, 2025. The Receiver shall file a

21   report summarizing the receivership on or before January 6, 2025.

22

23   IT IS SO ORDERED.

24      Dated:   November 17, 2024   

25                     UNITED STATES DISTRICT JUDGE

26

27

28

-19-